# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01136-COA

**RALPH EDWARD LLOYD A/K/A DIRT A/K/A**        **APPELLANT**
**RALPH LLOYD**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/17/2016 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH BRIGGS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ARMED ROBBERY, AND SENTENCED TO FORTY-FIVE YEARS, WITH THE LAST TEN YEARS OF THE SENTENCE SUSPENDED, AND SENTENCED TO FIVE YEARS UNDER THE FIREARM-ENHANCEMENT STATUTE, FOLLOWED BY FIVE YEARS OF SUPERVISED PROBATION; AND COUNT II, CONSPIRACY TO COMMIT ARMED ROBBERY, AND SENTENCED TO FIVE YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 08/01/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Ralph Edward Lloyd a/k/a "Dirt" was convicted of armed robbery and conspiracy to commit armed robbery, in violation of Mississippi Code Annotated sections 97-3-79 and 97-1-1 (Rev. 2014). For armed robbery, Lloyd was sentenced to forty-five years, with ten years suspended and an additional five-year sentence enhancement under Mississippi Code Annotated section 97-37-37(1) (Rev. 2014) for the use of the firearm. He was sentenced to five years for conspiracy. The sentences for armed robbery and conspiracy, as well as the firearm enhancement, were ordered to run concurrently. He filed a motion for a new trial or a judgment notwithstanding the verdict (JNOV). The circuit judge denied the motion, and Lloyd appealed. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Around noon on October 15, 2015, Canton police officers responded to a radio call for a robbery. The victim, Arthur James Luckett, reported that he was robbed at gunpoint by four men wearing Halloween masks. Luckett owned a lawn-maintenance company and had been working in the area of Mary Court in Canton. He informed police that he was approached from behind and heard a voice tell him that he was being robbed. Luckett turned around and found that he was being held at gunpoint. While one man held the gun, a second person reached into his pockets and removed his money. He reported that the men took $500 in cash and one money order. After the robbery, the men ran off.

¶3.     The police searched the area but were unable to locate the suspects or any evidence from the crime. During their search, an investigator came upon Kendoirus Hobson sitting on a porch. Hobson was known to police as a former criminal informant and also for his

2

prior criminal convictions. When asked about the robbery, Hobson named "Willow," "Collier," "Dirt," and "Dick" as the perpetrators. Dirt is Lloyd's nickname.

¶4.     In his statement, Luckett told police that two of the men wore ghost-like Halloween masks and one man wore a gorilla mask. He was unable to identify the fourth mask. Luckett also told police that he was familiar with the voice of the robber. He identified the speaker as Willie Louis ("Willow"). He reported that he had known Willow and his family for years and that Willow had previously worked for him.

¶5.     Based on these statements, the police questioned Willow. Willow, who was fourteen years old at the time, initially denied his involvement. But he provided the names of two potential suspects. In a subsequent interview, Willow changed his story. He continued to deny his involvement, but he told police that Lloyd, Dick, and Collier had participated. At trial, he testified that just before the robbery he had been with Lloyd, Dick, Collier, and "Mane Mane" at Lloyd's house. He further testified that Lloyd handed out masks and participated in the robbery. In exchange for his testimony, Willow entered a guilty plea to simple robbery, and the district attorney's office recommended a sentence of fifteen years' imprisonment.

¶6.     At the trial, Hobson testified that he was with several of the suspects at Lloyd's house when the others planned the robbery. According to Hobson, Lloyd was among the group and had gone into his house to retrieve a backpack that contained ski masks. Hobson further testified that he stood at the edge of the driveway and observed the men as they went around Lloyd's house, put on the masks, and went down the street to rob the victim.

¶7. A jury convicted Lloyd of armed robbery and conspiracy to commit armed robbery. The circuit judge sentenced him to forty-five years, with ten years suspended and an additional five years for the use a firearm in the commission of an armed robbery. He was sentenced to five years for conspiracy to commit armed robbery. The sentences were ordered to be served concurrently in the custody of Mississippi Department of Corrections. Aggrieved, Lloyd filed a posttrial motion for a new trial or JNOV. The circuit judge denied the motion.

## STANDARD OF REVIEW

¶8. "[A] motion for a new trial challenges the weight of the evidence." *Goldsmith v. State*, 195 So. 3d 207, 212 (¶17) (Miss. Ct. App. 2016) (citation omitted). "This Court's standard of review of a trial court's denial of a motion for a new trial is abuse of discretion." *Id.* (citation omitted). "A new trial will not be awarded unless the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id.* (citation and internal quotation marks omitted).

## ANALYSIS

¶9. Lloyd claims his trial counsel was ineffective because he failed to request a cautionary jury instruction. He argues that his conviction cannot stand because it was based solely on the testimony of an accomplice. He asserts that when the only evidence against a defendant is the testimony of an accomplice, the trial judge must accede the accused's request and grant a cautionary jury instruction. He contends that but for his trial counsel's failure to make the request, the result of the proceeding would have been different.

4

¶10. "A defendant in a criminal case is entitled, under both the United States and Mississippi Constitutions, to effective assistance of counsel." *Carson v. State*, 212 So. 3d 22, 27 (¶17) (Miss. 2016) (citation omitted). "In order to establish ineffective assistance of counsel, [Lloyd] must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and adopted by the Mississippi Supreme Court in *Stringer v. State*, 454 So. 2d 468, 476-77 (Miss. 1984)." *Goldsmith*, 195 So. 3d at 215 (¶43). "[Lloyd] must demonstrate: (1) counsel's performance was deficient and (2) that the deficiency prejudiced the defense." *Id.* at 215-16 (¶43) (citation omitted). "The *Strickland* test is applied with deference to counsel's performance, considering the totality of the circumstances to determine whether counsel's actions were both deficient and prejudicial." *Id.* at 216 (¶43) (citation omitted).

¶11. "Generally, ineffective-assistance claims are raised during postconviction proceedings." *Id.* at (¶44) (citation omitted). "However, a claim of ineffectiveness may be raised on direct appeal 'if such issues are based on facts fully apparent from the record.'" *Id.* (quoting M.R.A.P. 22(b)). "If the record cannot support a claim of ineffectiveness, then the appropriate action is to deny relief, preserving the defendant's right to argue the same issue through a petition for postconviction relief." *Id.* (citation omitted).

¶12. Our supreme court has held "[t]he clear law in the State of Mississippi is that the jury is to regard the testimony of co-conspirators [and accomplices] alike with great caution and suspicion." *Carson*, 212 So. 3d at 27 (¶19) (citation and internal quotation marks omited). "When determining whether a defendant is entitled to a cautionary instruction to this effect,

the trial judge considers: (1) whether the witness was in fact an accomplice and (2) whether the witness's testimony was corroborated." *Id.* "Although the decision to grant a cautionary instruction about the testimony of an accomplice ordinarily is within the trial judge's discretion, this instruction is mandatory when the accomplice's testimony is the sole basis for the conviction and when the defendant's guilt is otherwise not clearly proven." *Id.* at 27-28 (¶19).

¶13.    Lloyd argues there was no physical evidence that connected him to the crime. He contends that the uncorroborated testimony of Willow and Hobson was the only evidence against him. He argues that both Willow and Hobson were accomplices in this case. He first asserts that Willow was an accomplice by virtue of being indicted as a codefendant. He next asserts that Hobson was an accomplice because Willow implicated Hobson as being involved in the robbery plot.

¶14.    The State argues that the trial counsel's failure to request a cautionary accomplice jury instruction did not constitute deficient representation because no cautionary instruction was required. The State asserts that Willow's testimony regarding Lloyd's involvement was corroborated by Hobson, who was not an accomplice.

¶15.    The supreme court has held that "[a] defendant is entitled to a cautionary instruction if the trial court finds that the testimony of the accomplice is uncorroborated." *Jones v. State*, 203 So. 3d 600, 611(¶33) (Miss. 2016). The supreme court has defined "accomplice" as 'a person who is implicated in the commission of a crime." *Brewer v. State*, 725 So. 2d 106, 124 (¶84) (Miss. 1998) (citation omitted). We find that Lloyd's trial counsel provided a

constitutionally deficient performance by failing to request an accomplice-testimony jury instruction.

¶16. No physical evidence connected Lloyd to the armed robbery. The State relied on Willow's testimony to assert Lloyd's involvement in the robbery. Willow testified against Lloyd in exchange for a plea deal of a lesser sentence. During trial, Willow admitted that he lied about his involvement and changed his story several times. We find "no strategic explanation for forgoing a jury instruction that would have discredited [Willow's] testimony." *Carson*, 212 So. 3d at 28 (¶20).

¶17. Despite the foregoing finding, we do not hold that Lloyd has shown that his counsel's deficient performance prejudiced his defense. "Under *Strickland*, to establish constitutionally ineffective assistance, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at (¶21) (quoting *Strickland*, 466 U.S. at 694).

¶18. Here, the jury also heard testimony from Hobson. In his testimony, Hobson placed himself among the men while the robbery plot was being hatched. An investigator testified that Hobson was questioned, and the police declined to charge him in connection with the crime. The State contends that he was therefore not an accomplice and, thus, his testimony was permissible to corroborate Willow's testimony. In his initial statement to police, Willow identified Hobson as one of the perpetrators of the robbery. However, in a subsequent statement and during his testimony, he stated that Hobson was not involved. Notably,

Willow did not change his story as to Lloyd. He remained adamant that Lloyd participated in the robbery.

¶19. "Certainly, the jury could deduce that [Willow] had an incentive to lie. We do not conclude that a reasonable probability exists that the result would have been different with an accomplice-testimony [jury] instruction." *Id.* Therefore, we find no error and affirm.

¶20. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON AND WESTBROOKS, JJ., CONCUR. GREENLEE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**